Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| JOEL HERNÁNDEZ SANTOS<br><br>*Recurrente*<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>*Recurrido* | KLRA202300410 | Revisión Administrativa procedente del Departamento de Corrección y Rehabilitación<br><br>Número de caso:<br>B705-32455<br><br>Remedio Administrativo Núm.:<br>PP-703-23 |
|---|---|---|

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de septiembre de 2023.

Comparece el señor Joel Hernández Santos (señor Hernández Santos o recurrente) mediante *Recurso de Revisión Administrativa* y nos solicita la revisión de la *Resolución* emitida y notificada el 19 de mayo de 2023 por el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación (Comité). Mediante dicha determinación, el Comité recomendó ratificar la custodia mediana del recurrente[1].

Por los fundamentos que exponemos a continuación, **revocamos** la determinación impugnada.

**I.**

Según surge del expediente ante nuestra consideración, el 2 de mayo de 2008, el señor Hernández Santos fue sentenciado a trescientos quince (315) años de prisión por la comisión de tres (3) asesinatos en primer grado e infracción a varios artículos de la Ley de Armas, Ley Núm. 404-2000[2]. El 5 de agosto de 2008, el

---

[1] El recurrente se encuentra ingresado en una institución del Departamento de Corrección y Rehabilitación.
[2] 25 LPRA ant. sec. 455 *et seq.*

recurrente fue clasificado en custodia máxima. Posteriormente, el 19 de abril de 2022, fue reclasificado a custodia mediana.

El 19 de mayo de 2023, el Comité se reunió para evaluar el plan institucional del recurrente y ratificó su nivel de custodia mediana. Según surge del documento intitulado *Acuerdos del Comité de Clasificación y Tratamiento*, los fundamentos para la determinación del Comité fueron los siguientes:

> Sentenciado a 315 años, por los delitos de asesinato y leyes de armas, en donde, con armas de fuego pierden la vida un [sic] tres seres humanos. Reclasificado de custodia máxima a custodia mediana el 19 de abril de 2022, hace 01 año. El mínimo de su sentencia está pautado para el 06 de mayo de 2087, restándole 64 años para ser referido a la Junta de LBP, el máximo lo tiene pautado para el 28 de abril de 2314, restándole 291 años para extinguirlo. Deberá continuar en su custodia mediana por un tiempo adicional en donde puede participar de terapias, programas y actividades; así observando los ajustes para futuros privilegios. **Se utiliza modificación NO discrecional, 15 años antes de la fecha para el referido de Libertad Bajo Palabra**. (Énfasis nuestro).

De conformidad con lo antes indicado, el Comité emitió la *Resolución*[3] cuya revisión nos ocupa.

En desacuerdo con la determinación, el 24 de mayo de 2023, el recurrente presentó una solicitud de reconsideración ante la Unidad de Servicios Sociopenales. En esencia, arguyó que durante el periodo de evaluación no incurrió en actos de indisciplina y ha completado varios programas de terapias. Además, solicitó que se aplicaran las disposiciones de la Ley Núm. 85-2022, *infra*, y se le reclasificara a custodia mínima. El 14 de junio de 2023, notificado el 6 de julio de 2023, el Comité determinó no acoger la solicitud de reconsideración instada por el recurrente.

Inconforme, el 26 de julio de 2023, el recurrente entregó en la Institución Correccional el Recurso de Revisión Administrativa que nos ocupa y señaló al Comité la comisión de los siguientes errores:

> Erró el Comité de Clasificación y Tratamiento al ratificar la custodia mediana del Sr. Hernández Santos utilizando como único fundamento la Modificación No

---

[3] Véase apéndice del *Escrito en Cumplimiento de Resolución*, pág. 7.

Discrecional "Más de 15 años antes de la fecha máxima de libertad bajo palabra".

El 25 de agosto de 2023, emitimos una *Resolución* en la que le concedimos un término al Departamento de Corrección y Rehabilitación (DCR o agencia recurrida) para presentar su posición sobre los méritos del recurso.

Luego de una solicitud de prórroga, el 18 de septiembre de 2023, el DCR, representado por la Oficina del Procurador General de Puerto Rico, presentó su *Escrito en Cumplimiento de Orden*. En esencia, arguyó que la Hoja de Liquidación que el Comité utilizó para aplicar la modificación no discrecional de más de quince (15) años para cumplir el máximo para la Junta de Libertad Bajo Palabra tiene fecha de 19 de agosto de 2008 y no estaba atemperada a las disposiciones de la Ley Núm. 85-2022, *infra*, ni a la Carta Circular Núm. 2023-02, emitida el 15 de junio de 2023 por el DCR. Por tanto, solicitó que se devuelva el caso al DCR para que el Comité tenga la oportunidad de evaluar si con la hoja reliquidada procede ratificar la custodia mediana del recurrente o su reclasificación a custodia mínima.

Con el beneficio de la comparecencia de las partes, procedemos a resolver el recurso de epígrafe.

**II.**

**-A-**

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, *supra*, establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[4]. Por su parte, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), establece el marco de revisión judicial de estas decisiones[5]. Cónsono

---

[4] Art. 4006(c), 4 LPRA sec. 24(y)(c).
[5] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

con lo anterior, nuestra función revisora se delimita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[6].

Debido a la vasta experiencia y conocimiento especializado que tienen las agencias administrativas sobre los asuntos que le son encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[7]. Es por esta razón, que la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción[8]. Hay que señalar que las determinaciones de los organismos administrativos están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[9].

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si ésta actuó de forma arbitraria, caprichosa o ilegal[10]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[11]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado; (2) la decisión de la agencia está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[12].

---

[6] *Cruz Rivera v. Mun. de Guaynabo*, 205 DPR 606 (2020); *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

[7] *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012).

[8] *López Borges v. Adm. Corrección*, 185 DPR 603 (2012); *Federation des Ind. v. Ebel*, 172 DPR 615, 648 (2007).

[9] *López Borges v. Adm. Corrección, supra.*

[10] *Vélez v. A.R.P.E.*, 167 DPR 684 (2006).

[11] *Hernández, Álvarez v. Centro Unido*, 168 DPR 592 (2006).

[12] *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012). *Rolón Martínez v. Superintendente*, 201 DPR 26, 35-36 (2018).

Ahora bien, si la decisión del organismo administrativo no estuvo basada en evidencia sustancial; erró en la aplicación o interpretación de las leyes o los reglamentos que se le encomendó administrar; o actuó de manera irrazonable, arbitraria o ilegal, al realizar determinaciones carentes de una base racional; o si la actuación lesionó derechos constitucionales fundamentales, la deferencia debida a la agencia debe ceder[13].

Así pues, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración[14]. De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[15].

Sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente administrativo por el suyo. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[16].

**-B-**

De conformidad con la política pública consagrada en nuestra Constitución, se creó el Departamento de Corrección y Rehabilitación (DCR) como el organismo responsable de

---

[13] *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

[14] *Íd.*; *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 511 (2011); *Com. Seg. v. Real Legacy Assurance*, 179 DPR 692, 717 (2010); *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

[15] *O.E.G. v. Rodríguez*, 159 DPR 98, 118 (2003).

[16] *Rebollo v. Yiyi Motors, supra.*

implementar aquellos asuntos relacionados con el sistema correccional[17]. Cónsono con este imperativo constitucional, en función de mantener un sistema correccional eficaz y a los fines de reglamentar los asuntos relacionados con la clasificación y custodia de un confinado fue aprobado el *Manual para la Clasificación de los Confinados*, Núm. 9151, Departamento de Corrección y Rehabilitación, 22 de enero de 2020 (Manual de Clasificación o Manual Núm. 9151). El estatuto reglamentario se estableció con el propósito de implementar un sistema organizado para ingresar, procesar y asignar a los confinados en instituciones y programas de adultos del DCR[18]. A tales fines, se estableció el Comité de Clasificación y Tratamiento, responsable de evaluar las necesidades de seguridad y de programas de los confinados sentenciados[19].

Para realizar las reclasificaciones periódicas, se sigue el proceso establecido en la Sec. 7 del Manual de Clasificación, utilizando el *Formulario de Reclasificación de Custodia* (Formulario de Reclasificación)[20]. No obstante, la reevaluación de custodia no necesariamente resultará en un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir[21].

Mientras, el nivel de custodia se determinará empíricamente a través del instrumento de medición conocido como Formulario de Reclasificación, la escala de evaluación para determinar el grupo en el que se ubicará al confinado está basada en criterios objetivos a los que se asigna una ponderación numérica fija. Así, mientras más

---

[17] Artículo VI, Sec. 19, Const. ELA, LPRA Tomo 1, ed. 2016, pág. 455; Artículo 4 de la Ley Núm. 2-2011, denominado como Plan de Reorganización de 2011, 3 LPRA Ap. XVIII sec. 4.
[18] Artículo II del Manual de Clasificación.
[19] Sec. I del Manual de Clasificación.
[20] Formulario de Clasificación de Custodia, Apéndice K del Manual de Clasificación.
[21] Parte IV, Sec. 7, del Manual de Clasificación.

alta es la puntuación en la escala, mayor es el nivel de custodia que necesita el confinado[22].

Así, los criterios objetivos que el Comité evaluará en el proceso de reclasificación de custodia del confinado serán los siguientes: (1) la gravedad de los cargos y sentencias actuales; (2) historial de delitos graves previos; (3) historial de fuga; (4) número de acciones disciplinarias; (5) acciones disciplinarias previas serias; (6) sentencias anteriores por delitos graves como adulto; (7) participación en programas y tratamiento; y (8) la edad del confinado. A cada criterio descrito se le asigna una puntuación en la plantilla de evaluación que se sumará o restará según corresponda a la experiencia delictiva del confinado. El resultado de estos cómputos establece el grado de custodia que debe asignarse objetivamente al evaluado[23].

El Formulario de Clasificación también le provee al evaluador algunos criterios adicionales, discrecionales y no discrecionales, para determinar el grado de custodia que finalmente recomendará para determinado confinado o confinada. De este modo, el DCR procura asegurar el control y la supervisión adecuada de los miembros de la población penal, individualmente y como grupo. En específico, sobre las modificaciones discrecionales, el inciso (D) del Apéndice K del referido Reglamento, en lo aquí pertinente, consagra lo siguiente:

> Historial de violencia excesiva: El confinado tiene un historial documentado de conducta violenta, tales como asesinato, violación, agresión, intimidación con un arma o incendio intencional que no están totalmente reflejadas en la puntuación del historial de violencia. Esta conducta puede haber ocurrido hace más de cinco años antes, durante un encarcelamiento o mientras estuvo asignado anteriormente a un programa comunitario.

> Se refiere a confinados cuyo historial de funcionamiento social delictivo revele agresividad o que constantemente sus acciones manifiesten conducta violenta. Esta podría demostrarse a través de ataques físicos o tentativa de

---

[22] *López Borges v. Adm. de Corrección, supra*, pág. 609.
[23] Formulario de Reclasificación de Custodia, Apéndice K del Manual de Clasificación.

ataques a otros confinados, a oficiales de custodia, a empleados o a cualquier otra persona, acompañados estos en ocasiones por el uso de armas, vocabulario provocador e insultante o destrucción de la propiedad.

[...]

Nuestro más Alto Foro, ha reconocido que la determinación administrativa sobre el nivel de custodia de los confinados requiere efectuar un adecuado balance de intereses[24]. En un lado, está el interés público de lograr la rehabilitación de la persona confinada y el interés en la seguridad de la institución y de la población penal y al otro, estará el interés de la persona confinada particular de permanecer en determinado nivel de custodia[25]. El interés público en la rehabilitación de la población penal y en la seguridad institucional debe prevalecer sobre el interés particular del confinado en permanecer en un nivel de custodia en específico o en determinada institución penal[26]. Dado que, precisa el sopesar una serie de factores, la determinación sobre la procedencia de un cambio de custodia requiere la pericia del DCR[27].

El Comité está compuesto por peritos, técnicos socio penales, oficiales o consejeros correccionales que cuentan con la capacidad, conocimiento y experiencia necesaria para atender las necesidades del confinado y realizar este tipo de evaluación[28]. Es por ello que, salvo que sea arbitraria, caprichosa o no esté sustentada por evidencia sustancial, su determinación debe sostenerse[29]. Mientras que "la decisión sea razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta, el tribunal deberá confirmarla". Nuestro Tribunal Supremo ha puntualizado que la norma de deferencia a la determinación administrativa cobra aún más importancia en las

---

[24] *Cruz v. Administración,* 164 DPR 341, 352 (2005).
[25] *Íd.*
[26] *Íd.*, pág. 354.
[27] *Íd.*
[28] *Cruz v. Administración, supra.*
[29] *Íd.*

decisiones que toma el DCR sobre los niveles de custodia de los confinados[30].

**-C-**

El Artículo 308 del Código Penal de Puerto Rico[31] fue enmendado recientemente por la Ley Núm. 85-2022, aprobada el 11 de octubre de 2022. Esta enmienda, se hizo con el propósito de establecer una manera justa y rehabilitadora que le permitiese a la persona privada de su libertad, ser considerada para libertad bajo palabra al cumplir con los términos de la sentencia más onerosa relacionada a alguno de los delitos por los cuales la persona fue encontrada culpable.

Actualmente, el Artículo 308 del referido estatuto dispone lo siguiente:

> Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.
>
> En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir quince (15) años de su sentencia o cinco (5) años si se trata de un menor de edad procesado y sentenciado como adulto.
>
> **En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años** o reincidencia habitual **la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra, al cumplir veinticinco (25) años de su sentencia**, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto. Las personas convictas al amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de libertad bajo palabra.
>
> **En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los**

---

[30] *Íd.*
[31] 33 LPRA sec. 5416 *et seq.*

**delitos cometidos. Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas.** Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial.[32] (Énfasis nuestro)

### III.

En su recurso, el señor Hernández Santos sostiene que incidió el Comité al ratificar su custodia mediana utilizando como fundamento la modificación no discrecional "Más de 15 años antes de la fecha máxima de libertad bajo palabra". Asimismo, aduce que la determinación del Comité no consideró las enmiendas introducidas por la Ley Núm. 85-2022, *supra*.

Por su parte, la agencia recurrida, a través de la Oficina del Procurador General, solicitó que se devuelva el caso a la agencia con el fin de que el Comité evalúe el plan institucional del recurrente utilizando la nueva *Hoja de Control de Liquidación de Sentencia* y conforme a las disposiciones de la Ley Núm. 85-2022, *supra*.

Conforme a la normativa antes expuesta, la Ley Núm. 85-2022, *supra*, fue creada con el propósito de enmendar el Art. 308 del Código Penal de Puerto Rico y establecer los términos para cualificar para la consideración de la Junta de Libertad Bajo Palabra. El precitado estatuto entró en vigor inmediatamente después de su aprobación, es decir, a partir del 11 de octubre de 2022.

En virtud de lo anterior, acogemos la solicitud de la agencia recurrida al entender que ello es lo correcto en derecho. Por tanto, nuestro dictamen se limita a resolver que procede devolver el caso al Comité para que se evalúe el plan institucional del recurrente conforme a la normativa vigente. Lo anterior no prejuzga los méritos de ratificar la custodia mediana de la parte recurrente o su reclasificación a custodia mínima.

---

[32] *Íd.*

**IV.**

Por los fundamentos antes expuestos **revocamos** la determinación impugnada y **devolvemos** el caso al Departamento de Corrección y Rehabilitación para que el Comité de Clasificación y Tratamiento evalúe al señor Hernández Santos, conforme a las disposiciones de la Ley Núm. 85-2022, *supra.*

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones